[Cite as *In re M.M.A.*, 2026-Ohio-3087.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
MUSKINGUM COUNTY, OHIO

| | |
|---|---|
| IN THE MATTER OF: ADOPTION OF M.M.A. (DOB: 10-28-09) <br><br> (Keyle A., Appellant) | Case No. CT2025-0112 |
| IN THE MATTER OF: ADOPTION OF J.A. (DOB: 9-20-11) <br><br> (Keyle A., Appellant) | Case No. CT2025-0113 |
| IN THE MATTER OF: ADOPTION OF A.A. (DOB: 11-23-12) <br><br> (Keyle A., Appellant) | Case No. CT2025-0114 |
| IN THE MATTER OF: ADOPTION OF C.A. (DOB: 11-07-16) <br><br> (Keyle A., Appellant) | Case No. CT2025-0115 <br><br> <u>Opinion & Judgment Entry</u> <br><br> Appeal from the Court of Common Pleas of Muskingum County, Probate Division, Case Nos. 2025-4005, 2025-4006, 2025-4007, and 2025-4008 <br><br> Judgment: Affirmed <br><br> Date of Judgment: August 11, 2026 |

BEFORE: Craig R. Baldwin, Andrew J. King, and David M. Gormley, Judges

APPEARANCES: Michael J. Connick, Zanesville, Ohio, for Appellant Keyle A. (the children's mother); Rose M. Fox, Zanesville, Ohio, for Appellees John A. and Debra A. (the children's paternal grandparents, who are the adoption petitioners)

*Gormley, J.*

{¶1}     In this appeal from an adoption proceeding, the children's mother — Keyle A. — challenges the probate court's determination that both of the grounds set forth in R.C. 3107.07(A) were established by the adoption petitioners and that Keyle's consent to the adoption of her four children was therefore not needed.  Because we see no error in the trial court's ruling, we affirm the judgment.

## The Key Facts

{¶2}     Keyle is the mother of M.M.A., J.A., A.A., and C.A. (the children), who currently range in age from 9 to 16.  The children's father, Corey A., passed away in January 2021 from a drug overdose.  Keyle was indicted in February 2024 for her alleged involvement in Corey's death, and she pled guilty to some felony charges and began serving a prison term for them starting in May 2024.

{¶3}     The four children were first placed in the home of their paternal grandparents, John and Debra A., four years ago.  John and Debra then received court-approved legal custody of the children in September 2023, and together those grandparents filed a petition to adopt the children on March 3, 2025.  Keyle did not consent to the proposed adoption of her children.

{¶4}     The trial court held a hearing in August 2025 to determine whether Keyle's consent was required before John and Debra could adopt the children.  Keyle, John, and Debra testified at that hearing, as did the children's paternal aunt and their maternal grandparents.

{¶5}     Both John and Debra testified that Keyle had not provided any financial support for the children during the relevant one-year period before the March 2025 filing date

of the adoption petition. Keyle confirmed that assertion by the grandparents, but she noted during her own testimony that she was earning only $22 each month from her work in the prison and that she chose to spend that money on hygiene products. John and Debra testified, too, that Keyle had not visited with or communicated with the children since December 2023. Keyle in turn alleged that she had sent one letter to the children and that John and Debra, by declining to accept Keyle's collect phone calls, had interfered with her attempts to contact the children by phone from the prison.

{¶6} After considering the testimony presented by all of the witnesses, the trial court found that Keyle's consent was not required for the adoption of the four children because both of the exceptions listed in R.C. 3107.07(A) had been established. Keyle now appeals.

## We Find No Error in the Trial Court's Conclusion That Keyle's Consent Was Not Required for the Children's Adoption

{¶7} In her one assignment of error, Keyle contends that the trial court wrongly determined that her consent was not required when the four children's paternal grandparents sought to adopt them. In her appeal, Keyle challenges both of the trial court's consent-exception findings under R.C. 3107.07(A).

{¶8} Adoption terminates a parent's fundamental right to care for and to hold custody of a child. *In re Adoption of B.T.R.*, 2020-Ohio-2685, ¶ 18 (5th Dist.). Under Ohio law, the consent of the parent of a minor must ordinarily be secured for an adoption of that minor to proceed unless one of the exceptions in R.C. 3107.07 applies. *See* R.C. 3107.06; *In re Adoption of A.R.L.P.*, 2024-Ohio-3318, ¶ 24 (5th Dist.). R.C. 3107.07 in turn lists several scenarios that can eliminate the need for parental consent in an adoption case.

{¶9} The trial court in this case found that R.C. 3107.07(A) eliminated the need for Keyle's consent. That provision provides that consent of a minor's parent is not required in

an adoption case when the trial court finds, by clear and convincing evidence, that the parent has, without justifiable cause, had no more than "de minimis contact" with the child or that the parent, again without justifiable cause, has failed to "provide for the maintenance and support" of the child "as required by law or judicial decree." For both the de-minimis-contact inquiry and the maintenance-and-support inquiry, the relevant time period, according to R.C. 3107.07(A), is the one-year period immediately preceding either the filing of the adoption petition or the placement of the child in the petitioner's home. (Because the adoption petition in this case was filed on March 3, 2025 — before the current version of R.C. 3107.07 took effect on March 21, 2025 — the trial court applied the version of the statute that was in effect when the petition was filed.)

{¶10} A petitioner seeking to adopt a child bears the clear-and-convincing burden of proof mentioned in the statute. *See In re Adoption of Z.A.-O.J.*, 2016-Ohio-3159, ¶ 20 (5th Dist.); *In re Adoption of M.B.*, 2012-Ohio-236, ¶ 3. Once the petitioner establishes that the child's parent has fallen short in the parent's de-minimis-contact duty or the maintenance-and-support duty, the parent must identify "some facially justifiable cause" for the failure, though the burden of proving the absence of any justifiable cause remains with the petitioner. *See In re Adoption of Bovett*, 33 Ohio St.3d 102, 104 (1987) ("a natural parent may not simply remain mute while the petitioner is forced to demonstrate why the parent's failure to provide support is unjustifiable").

{¶11} Clear and convincing evidence is evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "'Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether

the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.'" *In re Z.C.*, 2023-Ohio-4703, ¶ 8, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).

**{¶12}** Although the trial court here found that both the failure-to-contact and the failure-to-provide-support prongs of R.C. 3107.07(A) had been established (and that Keyle's consent to the proposed adoption was therefore not needed), the statute is in fact written in the disjunctive, and so any trial-court conclusion that parental consent is unnecessary need be supported by just one rather than both of the R.C. 3107.07(A) exceptions. *See In re A.K.*, 2022-Ohio-350, ¶ 17 ("a parent's failure to meet either provision is sufficient to nullify the need to obtain that parent's consent").

**{¶13}** We appreciate the trial court's analysis of both exceptions, but we focus today just on Keyle's alleged failure to provide for the maintenance and support of her four children.

<u>Abuse of Discretion is our Standard of Review on the Alleged Lack of Support, Though We Examine the Manifest Weight of the Evidence When We Consider the Parent's Justification for Any Lack of Support</u>

**{¶14}** We review for an abuse of discretion any trial-court determination that a parent has failed to provide for the maintenance and support of his or her child. See *In re Adoption of M.B.*, 2012-Ohio-236, ¶ 21 ("A probate judge has discretion to determine whether the biological parent provided support as contemplated by R.C. 3107.07(A)"). An abuse of discretion is more than an error of law or judgment and implies that the court's attitude is "unreasonable, arbitrary[,] or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶15}** A trial court's finding that no justifiable cause exists to excuse a parent's failure to provide support will not be disturbed unless the trial court's determination runs counter to the manifest weight of the evidence. *In re Adoption of Masa*, 23 Ohio St.3d 163 (1986),

paragraph two of the syllabus. In determining whether a judgment is against the manifest weight of the evidence, an appellate court must "review the record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Adoption of C.L.Y.*, 2022-Ohio-1133, ¶ 10 (3d Dist.).

<u>The Trial Court Did Not Err by Finding That Keyle Had Failed Without Justifiable Cause to Provide for the Maintenance and Support of the Children</u>

**{¶16}** The Supreme Court has explained that a three-step analysis governs the maintenance-and-support inquiry in an adoption case. *See In re Adoption of B.I.*, 2019-Ohio-2450, ¶ 15 ("whether a parent has failed to provide child support as required by law or judicial decree involves a three-step analysis").

**{¶17}** A court should first determine what the law or any judicial decree required of the parent during the year immediately preceding either the filing of the petition for adoption or the placement of the minor in the petitioner's home. *Id.* Because the adoption petition in this case was filed on March 3, 2025, the trial court rightly examined the one-year period between March 3, 2024 and March 3, 2025.

**{¶18}** Second, the trial court should determine whether the parent complied with his or her obligations under the law or that judicial decree. *Id.* Finally, if the parent failed during the relevant one-year period to comply with his or her obligation, the court should determine whether there was justifiable cause for that failure. *Id.*

**{¶19}** Regarding the first step, the parties agreed in the trial court that no court order had imposed a child-support obligation on Keyle for any of the four children. When we look, then, to Ohio law in general, we see that R.C. 3103.03(A) "sets forth a parent's obligation to

support his or her children in the absence of a child-support order." *B.I.*, 2019-Ohio-2450, at ¶ 21. The trial court therefore found — and we agree — that Keyle had a general obligation to support her children under that statutory provision, which tells us that the "biological . . . parent of a minor child must support the parent's minor children out of the parent's property or by the parent's labor." R.C. 3103.03(A).

**{¶20}** Regarding the second inquiry listed above, Keyle admitted during her testimony that she had not sent any money, necessities, or gifts for the maintenance and support of the four children during the one-year period. John and Debra also testified that they had not received any money from Keyle during that time. We therefore find that the trial court did not abuse its discretion by finding that Keyle had failed to provide for the maintenance and support of the children as required by R.C. 3103.03(A).

**{¶21}** In Keyle's challenge to the trial court's determination under the third step of the analysis that no justifiable cause excused her failure to provide support for her children, Keyle explains that she needed to purchase hygiene products for herself with the entirety of the $22 that she earned each month through her work at the prison. She argues, too, that John and Debra never asked her for any monetary support for the children.

**{¶22}** As stated above, the text of R.C. 3103.03(A) imposed upon Keyle the general duty to support her children "out of [her] property or by [her] labor," even in the absence of a court order. And the parent of a child "has an independent obligation to provide support for his child regardless of whether a request for support is made." *In re Adoption of C.H.B.*, 2020-Ohio-979, ¶ 35 (3d Dist.). *See also id.* at ¶ 36 ("we are not persuaded by Father's argument that his incarceration and the absence of a support order obviated his independent obligation to provide support" for his child).

**{¶23}** As for Keyle's argument that her incarceration excused her failure to provide support, "[i]ncarceration alone is not a justifiable excuse" for a parent's failure to provide maintenance and support of his or her child, "even if it lasts for the entire period considered by the court." *In re Adoption of Z.A.-O.J.*, 2016-Ohio-3159, ¶ 27 (5th Dist.). While the record demonstrates that Keyle was incarcerated for nearly the entire one-year period from March 3, 2024 through March 3, 2025, the record also shows that Keyle was out on bail from mid-February 2024 until her bail was revoked on March 13, 2024. The trial court noted that Keyle, during that short period when she was not in custody, provided no support for her children.

**{¶24}** Further, the trial court noted that no evidence presented at the adoption hearing indicated that Keyle was ever prohibited from sending money as support for the children. Keyle herself testified that she knew the address of the home where the children were staying, and she told the trial judge that she had on one occasion sent a letter to the children at that address. Those facts undercut her view that she was justified in failing to provide support. *See In re M.T.R.*, 2022-Ohio-2473, ¶ 33 (5th Dist.) ("Biological Father knew where he could send maintenance and support for his child. He knew the addresses of Maternal Great-Grandmother and Maternal Grandmother").

**{¶25}** Our court has explained that "'[e]ven a meager contribution to the child's support could satisfy the maintenance and support requirement of R.C. 3107.07(A).'" *In re D.L.C.*, 2021-Ohio-420, ¶ 21 (5th Dist.), quoting *In re Adoption of T.G.*, 2010-Ohio-3219, ¶ 10 (6th Dist.). *See also In re Adoption of C.A.H.*, 2020-Ohio-1260, ¶ 29-30 (5th Dist.) (a father's consent to a proposed adoption was needed where he had sent approximately $5 each month from his monthly $20 prison earnings to comply with a child-support order).

**{¶26}** The trial court here acknowledged that while even minimal or nominal payments regularly sent by an incarcerated parent can constitute sufficient support so as to require that parent's consent for adoption, Keyle, during the one-year period, "failed to send even a single penny" to support her children despite testifying that she was earning a small income through working at the prison.

**{¶27}** On this record, then, we find that the trial court's conclusion that Keyle had failed without justifiable cause to provide for the maintenance and support of her four children was not against the manifest weight of the evidence.

**{¶28}** And because the trial court was required to find only that at least one of the two grounds listed in R.C. 3107.07(A) had been established, we need not address the trial court's conclusion that Keyle's contact with the children was no more than de minimis during the key one-year period. *See In re Adoption of A.H.*, 2013-Ohio-1600, ¶ 18 (9th Dist.) ("Mother's failure to provide any financial support for her children . . . without justification, supported the trial court's finding under R.C. 3107.07(A) that her consent to the adoption . . . was not necessary," and in those circumstances, the court of appeals "need not address whether the evidence supported the trial court's alternate finding that Mother's lack of contact with the children also had been without justification").

**{¶29}** Finding no error in the trial court's conclusion that R.C. 3107.07(A) eliminated the need for Keyle's consent to the adoption of the children, we overrule Keyle's sole assignment of error.

**{¶30}** For the reasons explained above, the judgment of the Probate Division of the Court of Common Pleas of Muskingum County is affirmed. Costs are to be paid by Appellant Keyle A.

By: Gormley, J.;

King, P.J. and

Baldwin, J. concur.